UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DAKOTA JAMES CALDWELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 2:19-cv-00526-JPH-DLP ) |
| VIGO COUNTY SHERIFF'S DEPARTMENT, RORY LEECH Sgt. In Vigo County Sheriff's Department, JON SILVER Dep. In Vigo County Sheriff's Department, MELISSA PHERSON Case Worker – Vigo County DCS, HALEY LINDLEY Case Worker – Vigo County DCS, TIM TAYLOR Deputy in Vigo County Sheriff's Department | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Dakota Caldwell, alleges that the Defendants unlawfully searched his home without his consent to investigate an anonymous child-welfare tip, violating his Fourth Amendment rights. Dkt. 1. Defendants—deputies from the Vigo County Sheriff's Department and caseworkers from the Indiana Department of Child Services—have separately moved for summary judgment. Dkt. [37]; dkt [42]. For the reasons listed below, both motions for summary judgment are **GRANTED**.

1

# I.
# Facts and Background

Because Defendants moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

After receiving an anonymous tip about the welfare of Mr. Caldwell's children, a DCS caseworker went to Mr. Caldwell's home on May 2, 2019 with two Vigo County Sheriff's Deputies. Dkt. 37-1 at 12–14 (Caldwell Dep.). Mr. Caldwell told them to leave because they did not have a warrant, and they left. *Id.* at 16.

The next morning, on May 3, two DCS caseworkers—Defendants Melissa Pherson and Haley Lindley—arrived at Mr. Caldwell's home, but he would not let them in. *Id.* They left, but shortly afterwards two Vigo County Sheriff's Deputies—Defendants Jon Silver and Rory Leech—arrived. *Id.* at 24–25; *see* dkt. 37-1 at 26 (Leech Dep.). Mr. Caldwell met them at the door with a handgun tucked in his waistband. Dkt. 37-1 at 24–27 (Caldwell Dep.); dkt. 37-2 at 27 (Leech Dep.). He then tried to shut the door, but the deputies forced their way into the house. Dkt. 37-1 at 27–28 (Caldwell Dep.). The deputies took Mr. Caldwell's gun, removed him from the house, patted him down, and attempted to handcuff him. *Id.* at 29–34. After a struggle, the deputies "slammed" Mr. Caldwell onto his porch, then briefly released him before

arresting him for felony intimidation. *Id.* at 34–40; dkt. 37-3 at 39 (Silver Dep.).

After Mr. Caldwell was arrested and removed from his property, the DCS Caseworkers asked Ms. Adriana Golden—Mr. Caldwell's spouse who also lived at the residence—if they could come into the house. Dkt. 37–6 at 18 (Golden Dep.). She initially said no, but when they asked again, she allowed one of the officers and one of the DCS workers inside. *Id.* at 18–19. She did not object when the other caseworker later entered the house. *Id.* at 18.

Mr. Caldwell brought this case under 42 U.S.C. § 1983 for unlawful search and seizure and under the Fourth Amendment. *Id.* at 3. The DCS Defendants and the Vigo County Sheriff's office filed separate motions for summary judgment. Dkt. 37; dkt. 42.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted).

### III.
### Analysis

The DCS Caseworkers and the Vigo County Sheriff's Department and its deputies have filed separate motions for summary judgment. Dkt. 37; dkt. 42.

**A. Deputies Leech, Silver, and Taylor**

The Deputies argue that their actions were a reasonable response to exigent circumstances and that they are entitled to qualified immunity. Dkt. 38 at 5–11. Mr. Caldwell does not respond to these arguments. *See* dkt. 55.

Qualified immunity protects state officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Leiser v. Kloth,* 933 F.3d 696, 701 (7th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To defeat a qualified-immunity defense, a plaintiff must show two elements: (1) the violation of a constitutional right, and (2) that "the constitutional right was clearly established at the time of the alleged violation." *Id.* The second element requires a plaintiff "to show some settled authority" that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 702. In other words, "existing

precedent must have placed the statutory or constitutional question beyond debate." *Id.*

Because the Deputies raised a qualified immunity defense, Mr. Caldwell bears the burden "to defeat it." *Id.* at 701. However, his response to the Deputies' summary-judgment motion cites no precedent at all—much less "settled authority" showing a clearly established constitutional violation. *Id.* at 702; dkt. 55. Nor has he shown that this is a "rare case" when the Deputies' actions were "so egregious" that a constitutional violation is obvious. *Leiser*, 933 F.3d at 702. The Deputies did not have a warrant to arrest Mr. Caldwell or to enter his home, as is ordinarily required "absent exigent circumstances." *Sparing v. Village of Olympia Fields,* 266 F.3d 684, 690 (7th Cir. 2001) (consent or exigent circumstances is required for police to enter a home to effectuate or complete an arrest). But the Deputies have designated evidence of exigent circumstances, including that Mr. Caldwell was arguing with them while he had a handgun tucked into his waistband. *See* dkt. 37-1 at 26–27 (Caldwell Dep.); dkt. 37-3 at 22 (Silver Dep.); *Bogan v. City of Chicago,* 644 F.3d 563, 571 (7th Cir. 2011) ("The [exigent circumstances] doctrine has been applied . . . to situations that pose a danger to the officers or to others."); *see also Fitzgerald v. Santoro,* 707 F.3d 725, 732 (7th Cir. 2013).

In short, Mr. Caldwell has cited no authority overcoming the qualified immunity defense and has designated no evidence showing an obvious

5

constitutional violation. The Deputies are therefore entitled to summary judgment based on qualified immunity.[1]

### B. Vigo County Sheriff's Department

The Vigo County Sheriff's Department argues that it is not a "person" under 42 U.S.C. § 1983, so it cannot be sued under that statute, and that it cannot be liable based on "a subordinate's misconduct." *Id.* at 11. Mr. Caldwell does not respond to these argumenta. *See* dkt. 55.

As a local entity, the Sheriff's Department is "effectively the county," so it is a "person" that can be sued under § 1983. *Oesterlin v. Cook Cty. Sheriff's Dept.*, 781 Fed. App'x 517, 520 (7th Cir. 2019). However, it cannot be held vicariously liable for the actions of its employees. *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35–36 (2010) (explaining *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). Instead, it can be liable only for its own actions and corresponding harm. *See id.* In short, "[t]he critical question under *Monell* remains this: is the action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor?" *Glisson v. Ind. Dept. of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) (*en banc*).

Here, Mr. Caldwell has not argued or designated evidence that the Sheriff's Department's "official policy, widespread custom, or action by an official with policy-making authority" caused any constitutional violation. *Dixon v. Cty. of Cook*, 817 F.3d 343, 348 (7th Cir. 2016); *see* dkt. 55. There is

---

[1] Because the Deputies are entitled to qualified immunity, the Court does not address whether there may have been a constitution violation. *See Leiser*, 933 F.3d at 701 (addressing only the second qualified immunity element because it was dispositive).

6

therefore no basis for municipal liability here, and the Sheriff's Department is entitled to summary judgment. *See Bd. of Cty. Comm'rs v. Brown,* 520 U.S. 397, 402–05 (1997) (Courts must apply "rigorous standards of culpability and causation to ensure that the municipality is not held liable solely for the actions of its employee.").

### C. DCS Caseworkers Pherson and Lindley

The DCS Caseworkers argue that they are entitled to summary judgment because they entered Mr. Caldwell's house with Ms. Golden's consent. Dkt. 43 at 4. Mr. Caldwell responds that Ms. Golden's consent was involuntary since it was made "[o]ut of fear and duress." Dkt. 46 at 1.

While warrantless searches are presumptively unreasonable, "one of the specifically established exceptions" to that rule is consent. *Vinson v. Vermilion Cty., Ill.,* 776 F.3d 924, 928 (7th Cir. 2015) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). Consent from only "one resident of jointly occupied premises" is enough unless another resident is present and objects. *Fernandez v. California,* 571 U.S. 292, 300–01 (2014). For example, a present spouse's consent can override an absent spouse's objection—including if the absent spouse was arrested and removed. *Id.* at 302–03; *United States v. Henderson,* 536 F.3d 776, 783–84 (7th Cir. 2008) (The absent owner's "objection loses its force because he is not there to enforce it.").

Consent, however, is invalid if it results from duress or coercion. *Bogan v. City of Chicago,* 644 F.3d 563, 568–569 (7th Cir. 2011); *Valance v. Wisel,* 110 F.3d 1269, 1279 (7th Cir. 1997). Whether consent is voluntary or is the

7

product of duress or coercion "is a question of fact to be determined from the totality of all the circumstances." *Valance,* 110 F.3d at 1278 (quoting *Schneckloth,* 412 U.S. at 227); *see United States v. DiModica,* 468 F.3d 495, 498 (7th Cir. 2006).

Here, the DCS Caseworkers' motion for summary judgment required Mr. Caldwell to "put his evidentiary cards on the table." *Sommerfield v. City of Chicago,* 863 F.3d 645, 649 (7th Cir. 2017) ("Summary judgment is not a time to be coy."); *see* dkt. 45 (notice of right to respond and submit evidence). Nevertheless, Mr. Caldwell has not designated any evidence in his response to the motion. *See* dkt. 46. Instead, he merely alleges that Ms. Golden "was not in a mental state to give consent" and therefore consented "[o]ut of fear and duress." *Id.* at 1. That "[s]peculation is no substitute for evidence at the summary judgment stage." *Bass v. Joliet Public Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014).

Moreover, the DCS Caseworkers' designated evidence reveals no triable issue of fact on whether Ms. Golden's consent was voluntary. Ms. Golden testified that she let the sheriff's deputies into the house because she was "a little afraid," but she clarified several times that the statement was limited to her consent to the deputies' entering the house:

> A: But I know that I did let the officers and the DCS -- *well I know the officers.* I only let them in because I was a little afraid.
> Q: All right. And what were you afraid of?
> A: That they were going to do the exact same thing to me that they did to [Mr. Caldwell].
> Q: *When you say they, [who] are you referring to?*

8

> A: *The officers.*
> Q: The officers.
> A: I was afraid they were going to pull me out just like they did him.
>    \*     \*     \*
> Q: All right.  Did the officers ever tell you if you don't let the caseworkers in, we're going to put you in handcuffs and take you into custody?
> A: No.
> Q: Did they ever say anything like that?
> A: No, I was just afraid of what I saw.
> Q: Okay.  So it was just based on what you saw with [Mr. Caldwell] and nothing else?
> A: Yes, yes.

Dkt. 37-6 at 20–21 (Golden Dep.) (emphases added).  Ms. Golden also testified that while she initially let only Ms. Lindley into the home, Ms. Pherson came in ten or fifteen minutes later and Ms. Golden did not object or ask her to leave. *Id.* at 18 (Golden Dep.).

On this designated evidence, no reasonable jury could find that Ms. Golden's consent was not voluntary, at least as to the DCS Caseworkers. *Wonsey v. City of Chicago*, 940 F.3d 394, 399–400 (7th Cir. 2019) (affirming summary judgment based on consent when the plaintiff failed to designate evidence contradicting defendant's proof of consent); *cf. United States v. Contreras*, 820 F.3d 255, 270–71 (7th Cir. 2016) (finding, in the motion to suppress context, that "an initial display of force is not inherently coercive" and ample evidence supporting a consent's voluntariness).  They are therefore entitled to summary judgment.

# IV.
# Conclusion

The Defendants' motions for summary judgment are **GRANTED**. Dkt. [37] (Vigo County Sheriff's Department and Deputies); dkt. [42] (DCS Caseworkers). Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 9/30/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DAKOTA JAMES CALDWELL
3215 E. Park Ave.
Terre Haute, IN 47805

Michael J. Blinn
INDIANA ATTORNEY GENERAL
michael.blinn@atg.in.gov

David P. Friedrich
WILKINSON GOELLER MODESITT WILKINSON AND DRUMMY
dpfriedrich@wilkinsonlaw.com

Gregory S. Loyd
INDIANA ATTORNEY GENERAL
gregory.loyd@atg.in.gov